JAMES M. BLEDSOE, plaintiff in error, vs. NATHANIEL M. BLEDSOE, and others, defendants in error.

29  385<br>126  853

Where property left by a testator to his children, has been fraudulently dispos-ed of, by collusion, between the executrix and the purchaser, the legatees may file a bill in their own name, against the purchaser, the executrix hav-ing died insolvent, and there being no representative upon her estate, or the estate of the testator.

In Equity, in Butts Superior Court. `Decision on demur-rer, by Judge CABANISS, September Term, 1858.

This was a bill filed by Nathaniel M. Bledsoe and others, children and grand-children of Morton Bledsoe, deceased, against James M. Bledsoe, and Jesse W. Wilson.

The bill states, that Morton Bledsoe departed this life in September, 1845, leaving his last will and testament, in and by which, he appointed his wife, Mary Bledsoe, executrix, during her life or widowhood, who qualified as executrix thereof, and possessed herself of the whole estate, real and personal of deceased, of the value of twenty thousand dol-lars or other large sum.    That by said will, testator devised and bequeathed his whole estate to his wife, the said Mary, in trust, to be by her worked and managed for the use, edu-cation and maintenance of herself and of such of his male

children as he might leave under age, and of such of his female children as he might leave unmarried, during their minority, and her natural life or widowhood, and until his female children should marry; and further authorizing his widow to sell and dispose of so much or such parts of his estate as she might think necessary to pay debts, &c.

Said will further directed, that in the event of the marriage of his wife, all the powers vested in her as executrix and trustee, should cease and determine, and that Elijah Bailey, and James M. Bledsoe, testator's son, should succeed her, as executors and trustees; provided that all testator's children should not at the time of her marriage, have attained the age of fifteen years, and that his estate be kept together until the youngest child attain the age of fifteen years, and then the whole to be equally divided between his wife and children, share and share alike forever. By the third clause of the will testator directed, that in the event of the death of his wife, Elijah Baily and James M. Bledsoe should succeed as his executors, and divide out his estate amongst his children, as before provided, when the youngest should attain to the age of fifteen years.

The bill further alleged, that testator, in his lifetime, executed a mortgage of fourteen hundred acres of land and eighteen negroes, with their increase, to one Charles Bailey and Gustavus Hendrick, to indemnify them as his sureties on two promissory notes, payable to one Anthony Dyer, for four thousand seven hundred and fifty dollars; that some payments were made by testator on these notes, in his lifetime, and at his death, there remained due on said notes, between three and four thousand dollars.

The bill further states, that testator before his death executed a note with security thereto, for the purpose of borrowing or raising money to pay off the balance of said mortgage, but which note was not negotiated, nor the money raised thereon, until after testator's death, when the same was done by his son, the said James M. Bledsoe, who with the

money thus raised, purchased and obtained the control of the mortgage, and the *fi. fa.* issued on the foreclosure thereof.

The bill further states, that the said Mary Bledsoe, executrix, at the suggestion and under the advice of the said James M., consented that the negroes should be sold under said mortgage *fi. fa.* for the purpose of protecting them from a security debt incurred by testator in his lifetime, the said James M. undertaking to purchase in said negroes for the benefit of herself and children, and to be held as under the provisions of said will; and that the said Mary, confiding in the integrity of the said James M., permitted said slaves to be sold, and the same were bid off by him at one-sixth of their value—he representing at the time, that he was buying them for the benefit of complainants, and procuring one Joseph Manly to put in or assert a pretensive claim to the same, and thus was enabled to bid off said negroes at a nominal price, and the amount of said sale was credited upon said mortgage *fi. fa.* After the sale, the negroes were returned to the plantation of testator, and the said James M. became the overseer on the premises for a year, and received the entire proceeds of the crop, amounting to some two thousand dollars.

The bill further alleges, that the said James M. and one Elijah Bailey, pretending to be acting for the benefit of the legatees under said will, persuaded and induced the said Mary, to permit a valuable tract of land belonging to said estate, and consisting of one thousand acres, to be sold under the encumbrance of said mortgage, promising that they would bid in the same, and return it to her as executrix, for the benefit of said legatees, and that said land was accordingly sold, and the same purchased by the said James M., at and for the sum of one hundred dollars, when the same was worth five thousand dollars.

The bill further alleges, that the said James M. and Elijah, by means of similar representations, induced said executrix to offer for sale another tract of land, containing three hun-

dred acres, belonging to the estate of her testator, and by false and fraudulent statements and representations, said land was bid off by the said Elijah, at and for the sum of two hundred dollars, the same being worth two thousand dollars; that said Elijah was disposed to carry out said agreement in good faith, but before the same was done, he died, and his widow, who administered upon his estate, shortly thereafter intermarried with Jesse W. Wilson, of the county of Newton, and who is made a defendant to the bill.

The bill further states, that Mrs. Bledsoe being a woman, and but little accustomed to the transaction of business, and the said James M. being the oldest son of testator, she confided in his honesty and gave up to him the control and management of the estate; and that he, taking advantage of her misplaced confidence, and in violation of his promises and their agreements and understandings, claimed all said negroes, and land and money as his own, and took possession of the same, and since her death, which occurred in 1855, he has continued to hold, claim and use the same as his own individual and absolute property, denying the rights of complainants in and to the same or any part thereof.

The bill further alleges, that all the children are over the age of eighteen years, and complainants pray that defendants, James M. Bledsoe and Jesse W. Wilson, may answer all and singular the allegations and charges of the bill, and set forth a full and true account of all the property in their hands, belonging to said estate, and that they account for the whole of said property, its increase and profits, and pay over the same to complainants, or their respective shares thereof. The bill further prayed for the writ of *quia timet* against the said James M. and Jesse W., and for an injunction to restrain them from selling the lands purchased as aforesaid by them, and for discovery, relief, &c.

To this bill defendants demurred, on the ground, that defendants were not answerable or liable to be called to account by complainants, as the legatees in remainder of Morton

Bledsoe, deceased, but only by an administrator, *de bonis non cum testamento annexo*, of Morton Bledsoe, deceased. And upon the further ground, that the Court had no jurisdiction as to Jesse W. Wilson, he not being a citizen of the county of Butts.

The Court overruled the demurrer, except as to Jesse W. Wilson, and as to him sustained it, upon the ground, of want jurisdiction. To which decision, counsel for James M. Bledsoe excepted, and assign the same as error.

BAILEY, FLOYD; and DOYAL, for plaintiff in error.

PEEPLES, *contra*.

*By the Court.*—LUMPKIN J. delivering the opinion.

Morton Bledsoe died in 1845, leaving a considerable estate, real and personal; a widow, whom he constituted his executrix, and fourteen children. By his will, his children were to be raised until the youngest male child attained the age of fifteen, at which time his property was to be distributed between them.

Being a debtor to one Dyer, with Gustavus Hendrick and Dr. Charles Bailey as his securities, he executed a mortgage to his securities, for their indemnity. He made some payments upon this debt in his lifetime; and had gone so far as to make a note to raise the balance of the money to pay this mortgage debt before he died. This note, however, was not negotiated, but was left in his possession at the time of his death. It is probable that James M. Bledsoe, the plaintiff in error, was security upon this paper, although the fact does not distinctly appear. After the death of Morton Bledsoe, the money was raised on this note by James M. Bledsoe, with which the mortgage was paid off and taken up.

It seems that the estate was under some other liability, actual or threatened, and James M. Bledsoe entered into an

arrangement with Mary Bledsoe, the widow, and executrix, to sell the property in such a way as would cause it to bring little or nothing; it was to be bought in by James M. Bledsoe, and placed back into the possession of Mrs. Bledsoe, to carry out the purposes of the will; that is, to make distribution of it amongst the children.

The negroes were sold under the mortgage, taken up by James M. Bledsoe, and kept open by him, at a nominal price, and the proceeds credited on the mortgage; and two tracts of land were sold by the widow as executrix, for the benefit of the heirs, under the encumbrance of the mortgage; one of which was bid in by James M. Bledsoe; and the other by one Elijah Bailey, the brother-in-law of Morton Bledsoe, and who participated in carrying out the arrangement entered into by Mary Bledsoe, and James M. Bledsoe. The property was returned to Mrs. Bledsoe, and James M. Bledsoe overseed it the first year, at a salary of $300. After this, James M. Bledsoe repudiated the whole transaction, setting up title in himself, both to the land and negroes.

Mary Bledsoe died in 1845, insolvent, and her estate is unrepresented; and the legatees have filed their bill against James M. Bledsoe, and one Wilson, who intermarried with the widow and only heir at law of Elijah Bailey, to recover the whole of the property except one share, with a view to its division amongst themselves, according to the will of their father. A general demurrer for want of equity, is filed to the bill; but the only ground relied on is, that the complainants are not entitled to sue for the property in their own name; and that it can only be recovered by an administrator, *de bonis non,* upon the estate of Morton Bledsoe.

Had the bill alleged, that there were no outstanding debts against the estate of Morton Bledsoe, there can be no doubt, we apprehend, but that the bill would be maintainable. How stands the matter upon the facts as stated in the bill? Ten years elapsed from the death of the testator to the death

of the executrix.    Had there been unpaid demands, it might
be fairly inferred, that some attempt would have been made
to enforce them within that time.    But concede that there
are debts still unsatisfied, will the defendant or creditors be
prejudiced by this proceeding ?

The defendant by his answer, can bring to the knowledge
of the Court, outstanding claims, if there be any.    And the
decree will be so framed as to protect him.    The creditors,
if there be any, can sue James M. Bledsoe, as executor *de
son tort*, interplead, pending the present proceeding; or fail-
ing to do either, they can follow, the estate, into the hands of
the legatees, even after a division, and compel them to con-
tribute to the payment of their demands.

Fourteen years have elapsed since the death of Morton
Bledsoe; the youngest child is eighteen years old; the pro-
perty was sold for the benefit of the complainants ; the assent
of the executrix to the vesting of these legacies, will be pre-
sumed from all the circumstances of this case.    The whole
transaction amounts to this.    Surely the legatees are entitled
to sue.    Why not ?.    The creditors have stood by all this
time with their arms folded; they could have administered.
If they should be put to some inconvenience, which there is
no reason to apprehend, they would have no cause to com-
plain.

Judgment affirmed,